635 A.2d 1100

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Wendell McMILLIAN.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1993.

Filed Dec. 16, 1993.

Dissenting Opinion Dec. 27, 1993.

Dennis C. McAndrews, Asst. Dist. Atty., Media, for Com., appellant.

Clinton L. Johnson, Chester, for appellee (submitted).

Before ROWLEY, President Judge, and McEWEN, CIRILLO, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, KELLY and JOHNSON, JJ.

PER CURIAM:

Appeal Quashed. Motion Granted.

120

BECK, J., filed a dissenting opinion which ROWLEY, President Judge joined.

DEL SOLE, J., concurred in the result.

BECK, Judge, dissenting:

The Commonwealth appeals an order dismissing the criminal charges against appellee. The Commonwealth asserts that the trial judge acted improperly in the following ways: 1) engaging in an ex-parte communication with the complaining witness (who happened to be his former client), 2) insisting that the prosecution proceed to trial even though the matter was listed for pre-trial conference, and 3) declaring appellant "not guilty" without affording the Commonwealth an opportunity to try the case.

The Commonwealth charged appellee with two separate burglaries for allegedly breaking into his employer's restaurant and stealing cases of food. In order to prove the charges, the Commonwealth planned to rely on the testimony of the employer who made the complaint.

The majority, in an unpublished memorandum Judgment Order, finds that the Commonwealth has waived the issues and therefore affirms the order which discharged appellee. I disagree and must dissent from my colleagues' conclusion that the waiver doctrine prevents our review of this matter. In my opinion, the severity of the allegations, and the support therefor in the record, require that we engage in appellate review.

In this case, the Commonwealth was put to "trial" without its primary witness. It is significant that the prosecutor specifically explained to the court that he had not subpoenaed the witness to appear because he did not expect to go to trial. This was understandable; the trial court record includes a Criminal Notice instructing appellee to return to court with counsel for a pre-trial conference on the day in question. In order to show the prosecutor's attempts to challenge the actions of the trial court, as well as provide a factual background for the issues in this case, a primary portion of the transcript is reproduced below:

Deputy District Attorney: Your Honor, the next thing I would bring to the court's attention is Commonwealth v. Wendell McMillian. Mr. McMillian is here. I do not see Mr. Johnson [defense counsel].

The Court: Isn't this the Nate Ellis matter?

Deputy District Attorney: Yes, sir.

The Court: Bring it up. It's a nolle pros, isn't it?

Deputy District Attorney: No, sir. No, sir, it is not.

The Court: It is not?

Deputy District Attorney: No, sir. The District Attorney has determined this defendant guilty of ARD [sic], and we are not agreeable to nolle pros it, sir.

The Court: The witness, whom you know, is personally known to me, having been a former officer of this Court. If I'm interrupting, I want to apologize to you respectfully. It's not my intention to interfere with whatever you all want to talk about. [pause] Let me finish. And Mr. Ellis called me personally to tell me that this man used to work for him. He had a bad day, broke in, and did some damage, repaid him back in full, and he doesn't want to prosecute. So it's not a case for ARD, either. So if he refuses it, we call it to trial. We call it for trial and we don't have a prosecuting witness.

Deputy District Attorney: Your Honor, we do not.

\*    \*    \*    \*    \*    \*

Deputy District Attorney: I can tell the Court, Your Honor, that the prosecuting witness in this case, Mr. Nate Ellis, who is known to these Courts ...

The Court: Personally known to me.

Deputy District Attorney: ... has indicated to me that he does not desire to prosecute this matter. However, I have to say to this Court that initially he did initiate these charges against this man for burglary and theft, sir. *I have not, at this juncture, asked him to be here for trial because I thought there was going to be another type of disposition.* However, I will say to the Court that he has indicated to me a lack of desire to pursue the matter.

The Court: Well let the record show if the Superior Court is listening, Nate Ellis, *who was a former client of mine, called me a half hour ago* and told me that he was not going to prosecute this young man. Now, Commonwealth, are you ready to proceed to trial?

Deputy District Attorney: Your Honor, I had indicated to the Court *I could call Mr. Ellis.* I think the Court ...

The Court: Mr. Johnson, do you have a motion to make?

Defense Counsel: Your Honor, we would ask that the Court call this matter for trial. And we've executed the appropriate waiver of a jury trial. And we ask that the court approve it. The defendant does understand all of the rights that he gives up. And we would direct that the Commonwealth call—we would direct you to ask that the Court direct the Commonwealth to call its first witness in the case.

The Court: We've done that.

Defense Counsel: Then the Commonwealth having no witnesses to call, we would—Defense rests. And we would ask that the Court give a verdict of not guilty as to all of the criminal informations filed in this matter against the defendant.

Deputy District Attorney: Your Honor, I can only repeat what I said before.

The Court: All right. So ordered.

Transcript (emphasis supplied).

It is clear that the trial judge made it difficult for the deputy district attorney to speak at all, let alone place a formal objection on the record. The dynamics of the courtroom cannot be ignored under this highly irregular set of facts. Indeed, our Supreme Court has recognized that the courtroom setting may present particular circumstances under which a party should be relieved of its duty to object formally to intemperate conduct by a trial judge. In *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985), the defense attorney failed to object to the trial judge's actions in cross-examining witnesses. In addressing whether the issue was waived for failure to preserve it, the Court stated:

In the courtroom, the judge is the foremost authority, second to none and no governor of the judge's conduct resides in the courtroom save the judge . . . The duty therefore lies with the judge to insure that his conduct is "above reproach," or, minimally, is not prejudicial. We therefore question the continued validity of the waiver doctrine as applied to improprieties of the trial judge for when the position of power and authority enjoyed by the judge is considered, the strict enforcement of the waiver doctrine becomes inadvisable.

*Id.* at 95, 494 A.2d at 1058 (citations omitted). *See also Commonwealth v. Celijewski,* 324 Pa.Super. 185, 471 A.2d 525 (1984) (counsel's failure to object to trial judge's alleged role as advocate during trial constituted waiver, yet merits of claim were considered and resolved). In light of *Hammer,* and after reviewing the record, I am confident that the circumstances of this case require that we consider its merits.

The issue then becomes whether jeopardy attached in the proceeding below. If it did, the trial court's order of not guilty precludes retrial. I would find that under these unique circumstances, jeopardy did not attach. I begin by noting, as the majority does, that jeopardy attaches when a defendant is put to trial before the trier of facts. *Commonwealth v. Rosario,* 418 Pa.Super. 196, 613 A.2d 1244, 1247 (1992). However, that definition sheds no more light on this issue than does the definition provided by the United States Supreme Court i.e., that jeopardy attaches when the court begins to hear evidence. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Unfortunately, this is not a case that fits neatly into any technical definition created by the courts. What occurred here was not typical; research reveals no similar case.

The purpose underlying the double jeopardy clause is to prevent the state from getting more than one chance at convicting a defendant:

The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once

for an alleged offense ... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Liciaga v. Court of Common Pleas of Lehigh County,* 523 Pa. 258, 566 A.2d 246, 249 (1989) (citing *Serfass v. United States,* 420 U.S. 377, 387–88, 95 S.Ct. 1055, 1061–62, 43 L.Ed.2d 265 (1975)).

In this case the trial judge did not give the Commonwealth its one opportunity to try the case against appellee. The trial judge himself concedes that the verdict of not guilty was erroneous. I am not persuaded that simply because the words "not guilty" are uttered by a trial judge, an acquittal occurs.

Although the form of the judge's action appeared to result in an adjudication of the matter, the substance of his action did not result in acquittal. Indeed, in *Commonwealth v. Smalis,* 331 Pa.Super. 307, 316, 480 A.2d 1046, 1050 (1984), *rev'd on other grounds sub nom., Commonwealth v. Zoller,* 507 Pa. 344, 490 A.2d 394 (1985), the Superior Court stated that "in determining whether action taken by the trial court has constituted an "acquittal" for double jeopardy purposes, the form of the judge's action is not controlling."

*Commonwealth v. McDonough,* 533 Pa. 283, 289, 621 A.2d 569, 573 (1993).

As an appellate court, we cannot lose sight of what actually occurred below. *See McDonough, supra* (judge's ruling of "not guilty" was not the result of a prosecution but instead was the product of an administrative procedure designed to clear the docket); *Commonwealth v. Adams,* 349 Pa.Super. 200, 502 A.2d 1345 (1986) (mid-trial discharge of appellant did not constitute an acquittal notwithstanding empaneling of

jury; trial court dismissed case when prosecution witness failed to appear).

Here the trial court *prevented* the Commonwealth from trying its case by attempting to force a "trial" to commence when none was scheduled and the Commonwealth was not prepared nor on notice to begin its case. Circumventing trial procedures, whether engineered by the parties, counsel or the judge, cannot be sustained. It can only be that there was no trial in this matter and, therefore, that jeopardy did not attach.

Finally, I express my concern over the judge's potential conflict in proceeding with this case once he was contacted ex parte by his former client. The courts must firmly discourage such disregard for criminal trial procedures and the mandates of the Judicial Code. The transcript presents an unsettling scenario that should not be repeated in any courtroom in this Commonwealth.

I would vacate the order of the trial court, hold that double jeopardy principles are not implicated on these facts and remand for trial on the charges originally filed or other appropriate proceedings.

ROWLEY, President Judge joins this dissent.